IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04 CR 371 - 1 |
| | ) | |
| LAURA M. BAXTER, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On May 19, 2005, defendant Laura M. Baxter ("Baxter"), entered a plea of guilty,

pursuant to a written plea agreement, (Dkt. Nos. 39, 41), to a one-count superceding information.

(Dkt. No. 33).  A Presentence Investigation Report ("PSR"), was prepared by the probation

officer and the case was set for sentencing on September 27, 2005.  The government on August

29, 2005 filed an objection (Dkt. No. 36), to the probation officer's calculation in the PSR of

Baxter's total offense level.  The government in that filing asserted that Baxter is responsible for

a tax loss to the United States in excess of $5.1 million[1] while the probation officer had opined,

based upon the probation officer's investigation and analysis, that Baxter was responsible for a

tax loss of $576,000.  (Dkt. No. 36).  On September 26, 2006, the court held a hearing on the

government's objections at which the government had the burden to prove by a preponderance

any disputed facts that the government sought to use to enhance Baxter's sentence based upon a

---

[1]  The government's initial position was that Baxter was responsible for a tax loss of $5.1
million but it supplemented its position on March 30, 2006 to increase that figure to the $5.5
million figure due to the January 2006 conviction of Laura Baxter's client, Michael Diesel, in the
District of Kansas.  (Dkt. No. 48).  Baxter's response to the government's supplemental
submission was filed on April 17, 2006.  (Dkt. No. 50).

tax loss greater than $576,000. *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005). Any sentence imposed, however, cannot exceed the maximum sentence allowed by the statute to which Baxter plead guilty which under 26 U.S.C. § 7212(a) is three years imprisonment and a $250,000 fine. For the reasons set forth below, this court finds that the government has failed to prove to a preponderance of the evidence that Baxter is responsible for a tax loss in excess of the $576,000 figure as set forth in the PSR. Nor did she use sophisticated means to conceal her criminal conduct. Lastly, the court finds Baxter is entitled to a three-level reduction for timely acceptance of responsibility.

BACKGROUND

The offense Baxter plead guilty to under the plea agreement is obstructing and impeding the administration of the federal tax laws in violation of 26 U.S.C. § 7212(a). (Dkt. No. 41 at ¶ 1). The facts that are not in dispute are set forth in the plea agreement and form the factual basis for Baxter's offense. The government and Baxter agree that the court should use the 1995 version of the United States Sentencing Commission Guidelines Manual (Dkt. No. 41, at pg. 6); (Sept. 27, 2005 Tr. at pg. 4), to determine the advisory United States Sentencing Guideline range in this case.

In making the recommendation in the PSR as to the sentencing range, the probation officer calculated Baxter's total offense level to be 17 and her criminal history category to be I. The probation officer arrived at a total offense level of 17 by first assigning a base offense level of 18 based on a tax loss of $576,000 pursuant to Guidelines § 2T4.1 and then adding a two-level enhancement under Guidelines § 3B1.3 because the defendant used her special skill as an accountant to facilitate the commission of the offense. The probation officer then deducted a

total of three levels representing a two-level reduction for acceptance of responsibility and a one-level reduction for timely notification of the government of her intention to plead guilty pursuant to Guidelines § 3E1.1.  Pursuant to the United States Guidelines Sentencing Table, a total offense level of 17, with a criminal history category of I, results in an advisory sentencing range of 24 to 30 months imprisonment.

As stated earlier, the government argues that Baxter is responsible for causing a tax loss in excess of $5.5 million through her participation in the Aegis system.  A $5.5 million tax loss would result in a base offense level of 22 pursuant to Guidelines § 2T4.1.  The government also argues that Baxter should receive a two-level enhancement for use of sophisticated means to conceal her crimes under Guidelines § 2T1.1(b)(2) in addition to the two-level enhancement under Guidelines §3B1.3 for her accounting skills that the probation officer previously assessed. The government further argues that Baxter should receive no reductions for acceptance of responsibility or timely notification.  Based upon the government's assertion of the facts, Baxter's total offense level would be 26.  With her criminal history category of I, the resulting sentencing guideline range would be 63 to 78 months which is substantially above the statutory maximum imprisonment of 36 months.

<u>ANALYSIS</u>

The statutory maximum sentence is established through consideration of facts either admitted by the defendant or found by a jury beyond a reasonable doubt.  *United States v. Paulus*, 419 F.3d 693, 697 (7th Cir. 2005) (citations omitted).  Baxter admitted in her plea agreement that she submitted a false document to the IRS in order to obstruct an IRS audit. (Dkt. No. 41 at pgs. 2-5).  This court can "use all information that [it] possess[es] in order to

properly compute [a] sentence." *United States v. Kroledge*, 201 F.3d 908, 908 (7th Cir. 2000) (citing 18 U.S.C. § 3661)).   This court applies the preponderance of the evidence standard in evaluating the factual disputes between Baxter and the government that this court must decide before sentencing Baxter.  *See United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005) (noting that the formalities of a trial, such as trial by jury and proof beyond a reasonable doubt, do not apply when the district court makes its factual findings that do not increase a sentence beyond the statutory maximum); *see also United States v. Hankton*, 432 F.3d 779, 789-91 (7th Cir. 2005) (detailing the standards to be applied in a sentencing hearing).

A.  Amount of the Tax Loss to the Government

The government has arrived at its argument of a $5.5 million tax loss by contending that Baxter is responsible for the tax losses caused by all of her clients using the Aegis tax scheme. Baxter counters that she is only responsible for the tax loss associated with the one client for which she submitted the false document to the IRS in order to obstruct the IRS audit.

The government asserts twelve[2] points of argument that the government contends

---

[2] The government's twelve assertions regarding Baxter are as follows:

1.    She had education, training and experience as a Certified Public Accountant ("C.P.A.").
2.    She had access to various tax research information.
3.    She could have accessed available public information that would have informed her that the Aegis system was a tax scheme that violated the law.
4.    She received notice from various sources, including IRS Public Notices and a letter from a Kansas State University professor, demonstrating that the Aegis system was unlawful.
5.    She could not have believed in good faith that she could rely on the Aegis system since the Aegis program materials she received included various disclaimers.
6.    She had a significant understanding of her clients' financial activities before they used the Aegis system and afterwards, and therefore had to have been aware that Aegis had no legitimate purpose.
7.    She should have realized that the Aegis system was unreasonable due to the obstructionist and unreasonable positions that Aegis took in relation to the IRS.

demonstrate that Baxter was responsible for the losses caused by all of her clients.  In summary, the government's points boil down to one key factual dispute: whether Baxter knew the Aegis system was unlawful, or at least, purposefully remained ignorant as to the legality of the Aegis system?  The government contends that Baxter was too well educated, had too much access to tax research information, and had too many warnings about the unlawful nature of tax transactions used by Aegis, including statements by Aegis personnel about the Aegis system that were clearly wrong, not to have figured out that Aegis was unlawful.

The government's arguments, however, are belied by the testimony of the government's own case agent investigating this case, IRS Special Agent Denis Umali, ("Umali").  Special Agent Umali contradicted the inferences the government asks this court to draw about Baxter's knowledge.  Umali, who has been an IRS Special Agent for the last 11 years, testified that Aegis "did a credible job creating the appearance of legitimacy." (Sept. 27, 2005 Tr. at pgs. 148-49).  Umali agreed that the people at Aegis made "slight misrepresentations of the law and took things

---

(Continued...)

8.  She admitted to conduct that obstructed the audit which supports the inference that she knew that the larger Aegis scheme was unlawful.
9.  She attended an Aegis training seminar in August 1995 where statements were made by Aegis promoters that were so clearly wrong that she had to be aware of the unlawful nature of the Aegis system.
10. She did not use Aegis for herself and her husband's own personal tax returns.  Therefore, she must have known the Aegis system was unlawful.
11. She made remarks in talking to the undercover agent and she heard remarks presented by Aegis promoters during the August 1995 meeting that the government contend demonstrate her knowledge that the Aegis system is unlawful.
12. She submitted personal tax returns to a bank in support of a small business loan which she purported to be her own.  Those submitted tax returns were different from the tax returns she filed with the IRS.

out of context to support that their system was legal." (Tr. at pg. 149). According to Special Agent Umali, the people at Aegis "were able to convince 600 or so clients to buy into" the alleged legitimacy of Aegis. (Tr. at 154). Special Agent Umali further testified that the Aegis did a "believable" job in promoting its system as legal. (*Id.*)

Umali's testimony supports Baxter's position that she believed that as long as she followed the Aegis system then the transactions implemented for her clients would be lawful. Baxter's trust in the Aegis system was also bolstered by her friendship with Shawn Dunn, a prior co-worker who was a promoter for Aegis. Baxter appears to have believed in the legality of the advice given by the Aegis instructors and in the legitimacy of the Aegis system, in part, because she trusted her friend Shawn Dunn. The evidence at the hearing held by the court establishes that Baxter was gullible like hundreds of other gullible people who were duped by Aegis and "who bought into the legitimacy of the Aegis system" according to the testimony of Special Agent Umali. (Tr. at pg. 154). It was Baxter's gullibility, not greed, that guided her actions as to the Aegis system.

There is no question Baxter is guilty of the offense to which she plead guilty, submitting a false document to the IRS to obstruct an IRS audit. But based on the evidence presented at the hearing and the court has reviewed, the court cannot say that the government has proven by a preponderance of the evidence that Baxter knew at the time of her offense the illegality of the Aegis system. The government has failed to meet its burden of showing by a preponderance of the evidence that Baxter sought to defraud the government through her use of the Aegis system so as to be accountable for the $5.5 million in tax loss as the government contends. Therefore, this court accepts the tax loss calculated by the probation officer of $576,000 resulting from

Baxter's obstruction of the audit.

## B.  Use of Special Skill and Sophisticated Means Enhancements

As for the government's other objections, this court finds that Baxter should receive a two-level enhancement for use of special skills as a C.P.A. under Guidelines § 3B1.3, but should not receive an additional two-level enhancement under Guidelines § 2T1.1(b)(2) for use of sophisticated means to impede the discovery of the existence or extent of the offense as argued by the government.  To create a total of a four-level increase under both Guideline §§ 3B1.3 and 2T1.1(b)(2) would result in inappropriate double counting under the facts of this case.  "A district court may not characterize the same conduct in two different ways to arrive at two separate sentence enhancements that result in an upward adjustment of the sentencing range." *United States v. Hankton*, 432 F.3d 779, 796 (7th Cir. 2005) (citing *United States v. Schmeilski*, 408 F.3d 917, 919 (7th Cir. 2005)).  Baxter used her special skills as an accountant to create a false document, but the creation of a false document is not a sophisticated means used to impede the discovery of her crime requiring the additional two-level enhancement under Guidelines § 2T1.1 sought by the government.

Application Note 4 to Guideline § 2T1.1 states:

"Sophisticated means," as used in subsection (b)(2) includes conduct that is more complex or demonstrates a greater intricacy or planning than a routine tax-evasion case.  An enhancement would be applied, for example, where the defendant used offshore bank accounts, or transactions through corporate shells or fictitious entities.

U.S. Sentencing Guidelines Manual § 2T1.1 n.4 (1995).

Baxter's criminal conduct in this case is the providing of a false document to obstruct an audit.  She did not admitted to participating in the Aegis system knowing that it was illegal.  This

court findings today that she did not knowingly engage in criminal conduct related to the Aegis system confirms Baxter's position to be appropriate under the facts. Thus, Baxter's criminal conduct is providing a single false document with false entries to halt an IRS audit and this criminal act by Baxter is not "more complex" and does not "demonstrate a greater intricacy or planning than a routine tax-evasion case." *Id.* It certainly is not as sophisticated as "using offshore bank accounts, or transactions through corporate shells...," two examples listed by in Application Note 4 quoted above.

C.  Acceptance of Responsibility

The court also finds that Baxter has accepted responsibility under Guidelines § 3E1.1(a) and provided timely notification to the government of her acceptance under Guidelines § 3E1.1(b). She notified the government sufficiently ahead of the scheduled trial date of her agreement to plead guilty to the one-count superceding information on which she will be sentenced to warrant the application of Guidelines § 3E1.1(b) when she fully admitted her complicity in the offense of conviction. Furthermore, Baxter has not falsely denied any additional relevant conduct for which she is accountable. Her actions have been in accordance with Guidelines § 3E1.1, and under that Guidelines section a three-level decrease is appropriate to arrive at her total offense level of 17.

## CONCLUSION

This court finds that the government has failed to demonstrate by a preponderance of the evidence that Baxter is liable for a tax loss in excess of $576,000. Therefore, this court denies the government's objections and accepts the probation officer's recommendation as to the Sentencing Guidelines calculations. Baxter's total offense level is 17, her criminal history category is I, and the advisory sentencing range pursuant to the Sentencing Guidelines is 24 to 30 months imprisonment.

ENTER:

*James F. Holderman*

_____

JAMES F. HOLDERMAN
United States District Judge

Date: April 27, 2006